UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

       Plaintiff,

                                   File No.  1:07-CR-77

v.

                                   HON. ROBERT HOLMES BELL

THOMAS JAY DONALL,

       Defendant.

_____/

## **O P I N I O N**

       This matter is before the Court on Defendant Thomas Jay Donall's motion to suppress the evidence obtained in the search of his personal residence, two night clubs and two automobiles.  (Def.'s Mot., Docket #15.)  Defendant contends that the affidavit of Special Agent Scott Hollabaugh was insufficient for the Magistrate Judge to conclude that there was probable cause for the issuance of a search warrant.  The government contends that the affidavit was sufficient for the Magistrate Judge to find probable cause and that in the alternative, the search is within the *Leon* good faith exception.  For the reasons that follow, Defendant's motion to suppress is granted in part and denied in part.

**I.**

Defendant operates two night clubs in Lansing, Michigan.  On June 4, 2004, the Internal Revenue Service ("I.R.S.") executed five search warrants.  The five search warrants were for the following locations:

> Defendant's Personal Residence - 812 Durant St., Lansing, Michigan
> Spiral Video and Dance Bar ("Spiral") - 1247 Center St., Lansing, Michigan
> X-Cel Night Club ("X-Cel") - 224 S. Washington Sq., Lansing, Michigan
> Defendant's 2004 SAAB Sedan, Michigan License #XFN997
> Defendant's 2003 Dodge Ram 1500 Pickup Truck, Michigan License #5328GP

Defendant moves to suppress the evidence obtained pursuant to these five search warrants. The search warrants were obtained based in part on information provided by a confidential informant.  The name of the confidential informant was not provided to the Magistrate Judge. The confidential informant is a former employee of Defendant.  The confidential informant primarily worked at X-Cel, though he did occasionally work at Spiral.

On March 27, 2007, Defendant was indicted on nine counts.  Counts one through four allege that Defendant made false or fraudulent statements on his 2000-2003 federal personal income tax returns.  Counts five through nine allege that Defendant made false or fraudulent statements on federal corporate income tax returns in 2000, 2002 and 2003.

**II.**

**A.    Sufficiency of the Affidavit**

The standard of review for determining whether an affidavit was sufficient to support the issuance of a search warrant "'is whether the magistrate had a substantial basis for finding

that the affidavit established probable cause to believe that the evidence would be found at the place cited.'" *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)).  "In reviewing the sufficiency of a search warrant affidavit, the 'magistrate's determination of probable cause is afforded great deference,' and should only be reversed if arbitrarily made." *United States v. Lattner*, 385 F.3d 947, 952 (6th Cir. 2004) (quoting *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001);  *United States v. Finch*, 998 F.2d 349, 352 (6th Cir. 1993)).  Consistent with the deference afforded the magistrate's determination, "[s]earch warrant affidavits must be judged based on the totality of the circumstances, rather than line-by-line scrutiny." *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006) (citing *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004); *Greene*, 250 F.3d at  479).

"'Probable cause exists where there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place.'" *United States v. Wagers*, 452 F.3d 534, 538 (6th Cir. 2006) (quoting *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003)).  "A court must look to the 'totality of the circumstances,' including a confidential informant's 'veracity, reliability, and basis of knowledge,' in order to answer 'the commonsense, practical question' of whether an affidavit is sufficient to support a finding of probable cause." *United States v. May*, 399 F.3d 817, 822 (6th Cir. 2005) (quoting *Illinois v. Gates*, 462 U.S. 213, 230 (1983)).  The Supreme Court has explained that:

affidavits for search warrants . . . must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

*United States v. Ventresca*, 380 U.S. 102, 108 (1965).

### 1.    The Confidential Informant

Defendant contends that the allegations of the confidential informant cannot support a finding a probable cause because the affidavit provides: (i) insufficient information about the basis of the confidential informant's knowledge, (ii) insufficient information about the confidential informant's reliability, and (iii) insufficient information about the government's corroboration of the confidential informant's statements.

Defendant contends that the affidavit insufficiently explains how the confidential informant came to believe that Defendant was underreporting his income from the two night clubs.  The affidavit states that the confidential informant was responsible for preparing "close out sheets," paying club expenses and handling payroll expenses.  (Hollabaugh Aff., Docket #17, at ¶ 3.)  The described duties of the confidential informant would have placed him in a position to be aware of each club's gross income and operating expenses.  This is sufficient for the Magistrate Judge to have concluded that the confidential informant had a basis for knowing the actual income of the two night clubs.  As to the confidential informant's basis for knowing that Defendant was underreporting the actual income of the

4

two night clubs, the affidavit indicates that the confidential informant had knowledge of and had seen a double set of books that Defendant maintained.  (*Id.* at ¶¶ 5, 6.)  In addition, the confidential informant indicated that Defendant had asked him to "throw away the original nightly close out sheets that showed X-Cel's true gross income."  (*Id.* at ¶ 8.)  Defendant correctly notes that the affidavit does not contain any statements indicating that the confidential informant had ever seen any of Defendant's tax returns, however, no such statement was necessary.  Given that the confidential informant's work responsibilities involved knowledge of the income and expenses for the two night clubs, the confidential informant was in a position to conclude that a double set of books and the disposal of accurate financial records, indicated that Defendant was underreporting his income to the I.R.S.

Defendant next contends that the affidavit does not establish the confidential informant's basis of knowledge regarding Spiral, because the confidential informant was primarily employed at X-Cel.  The affidavit states that the confidential informant "mainly worked at X-Cel, but the [confidential informant] has also worked at Spiral on occasion." (*Id.* at ¶ 3.)  The description of the confidential informant's work responsibilities does not indicate that he had different responsibilities at Spiral than he had at X-Cel.  The affidavit also states that the confidential informant had knowledge about Spiral based on conversations he had with Spiral's manager.  (*Id.* at ¶ 10.)  Though the confidential informant presumably had a more extensive understanding of X-Cel, the affidavit provides a substantial basis on

which the Magistrate Judge could have concluded that the confidential informant had a sufficient basis of knowledge about Defendant's practices at Spiral.

Defendant also contends that the affidavit insufficiently attests to the confidential informant's reliability. The confidential informant had not previously worked with the police or the I.R.S., so the affidavit could not contain a statement as to his reliability. In the absence of evidence of a confidential informant's reliability, the government must independently corroborate the informant's statements. *United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000) (en banc).

As to the assessment of the confidential informant's veracity, Defendant places much emphasis on the fact that the confidential informant's identity was not disclosed to the Magistrate Judge. While the disclosure of the confidential informant's identity to the Magistrate Judge bears on the informant's veracity, a confidential informant whose identity is known to the government is distinct from an anonymous informant. "The statements of an informant . . . whose identity was known to the police and who would be subject to prosecution for making a false report, are thus entitled to far greater weight than those of an anonymous source." *May*, 399 F.3d at 824-25. The affidavit never explicitly states that the confidential informant's identity was known to the I.R.S., nevertheless, the description of the interactions between the I.R.S. agents and the confidential informant makes clear that the confidential informant was in fact known to the I.R.S. Thus, the corroboration of the confidential informant's statements should be evaluated in the context of a source whose

6

identity was known to the police, not as an anonymous source.  In this context, the non-disclosure of the confidential informant's identity to the Magistrate Judge is of lesser significance.

Defendant contends that the affidavit insufficiently establishes that the confidential informant's statements were corroborated by independent police investigation.  Defendant contends that much of the corroboration that was done only corroborated Defendant's routine business practices.  Defendant contends that the independent corroboration of routine business practices is insufficient to establish the veracity of the confidential informant.  The routine business practices alleged by the confidential informant and independently confirmed by the I.R.S. were that: Defendant owns the property on which Spiral and X-Cel are located, Defendant typically deposits cash from the two night clubs on Monday, and Defendant carries a silver briefcase.  (Hollabaugh Aff. ¶¶ 2,3, 13, 14.)

Easily obtained facts and conditions are of minimal corroborative value, but the accurate prediction of future actions that are "not easily predicted" is relevant to the veracity of the confidential informant.  *Gates*, 462 U.S. at 245-46.  The corroboration of the confidential informant's statement that Defendant owned the property on which the two night clubs are located is of minimal value, as the confidential informant could have obtained this information from public records.  The confidential information's statement that Defendant made bank deposits on Monday and that he carries a silver briefcase indicates that the

confidential informant was familiar with Defendant's routine. Therefore, these two statements are of corroborative value.

Two other statements of the confidential informant were also corroborated. The I.R.S. corroborated that the amount of money that the confidential informant alleged Defendant was depositing in the bank was consistent with the amount of money that Defendant was reporting on his income tax returns. (Hollabaugh Aff. ¶ 19f.) After setting forth the facts establishing the corroboration of the confidential informant's statement about the amount of money Defendant was depositing, the affidavit continues:

> This corroborates the information provided by the [confidential informant], and tends to show that [Defendant] is only reporting the income he deposited into the business bank account and isn't reporting the income he deposited into his personal account or put in his safe.

(*Id.*) Defendant describes this statement as "alarming" and contends that instead of showing criminality, the statement shows that Defendant was reporting his full income because his reported income matched the amount of money the confidential informant alleged that Defendant was depositing in the bank. (Def.'s Br. in Supp., Docket #16, at 10.) The import of paragraph 19f in the affidavit derives from the statements about the corroboration of the confidential informant's statements. This paragraph indicates that the confidential informant's statements about Defendant's alleged scheme for concealing income from the I.R.S. were consistent with the facts available to the I.R.S. This type of corroboration indicates that the confidential informant was close enough to Defendant to have been privy to information such as Defendant's bank deposits. Corroborating the bank deposits does not

confirm that the remainder of the confidential informant's statements are accurate, but confirmation of part of the informant's description increases the likelihood that the remainder of the description is accurate.  *See Gates*, 462 U.S at 244 ("'[Because] an informant is right about some things, he is more probably right about other facts . . . .'" (quoting *Spinelli v. United States*, 393 U.S. 410, 427 (1969) (White, J., concurring)) (modification in *Gates*)).

Next, the confidential informant's information was corroborated with respect to the informant's claim that Defendant was trying to open a night club in Chicago.  (Hollabaugh Aff. ¶ 7.)  On January 12, 2004, the I.R.S. conducted a trash pull that found an envelope with a return address of the Recorder of Deeds for Cook County, Illinois.  (*Id*. at ¶ 16.)  Though the envelope does not confirm the specifics of Defendant's activities, the envelope is consistent with the confidential informant's statement and it is the type of information that is "not easily predicted."  *Gates*, 462 U.S. at 245.

Defendant notes that the investigation by the I.R.S. also revealed information that was inconsistent with the confidential informant's statements.  The confidential informant alleged that Defendant threw away the original nightly "close out sheets," however, when the I.R.S. conducted trash pulls at X-Cel on January 12, 2004, and April 5, 2004, the I.R.S. did not find any "close out sheets" in the trash.  (Hollabaugh Aff. ¶¶ 8, 16, 18.)  This inconsistency does not undermine the value of the confidential informant's information because there is no requirement the "that informants used by the police be infallible . . . ."  *Gates*, 462 U.S. at 246 n.14.  Also, two inconsistent trash pulls do not necessitate the conclusion that the

confidential informant was wrong, rather, it is quite plausible to conclude that no shredding was done on those two days.

Lastly, Defendant contends that more could have been done to corroborate the confidential informant's information, such as auditing Defendant or interviewing other employees of Defendant.  While the I.R.S. could have taken these additional investigative steps, these additional steps do not implicate the Court's assessment of the affidavit because "[t]he affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added."  *Allen*, 211 F.3d at 975.[1]

---

[1]Defendant did not seek a *Franks* hearing, however, one of Defendant's arguments is that the I.R.S. knew that one of the confidential informant's statements was false.  "When a defendant attempts to show that an affidavit for a search warrant contained false information, the defendant must make a 'substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause,' the court must conduct a hearing on the issue upon the defendant's request." *Rodriguez-Suazo*, 346 F.3d at 648 (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).  Defendant contends that the I.R.S. knew or should have known that the confidential informant's statement that Defendant pays all of his employees in cash was false because the I.R.S. had received employment tax returns for Defendant's employees.  In relevant part the affidavit states:

> The [confidential informant] stated that [Defendant] pays all of his employees with cash, and [Defendant] didn't file employment tax returns for X-Cel. . . . The [confidential informant] stated [Defendant] instructed the [confidential informant] to prepare false employee payroll records in 2003 showing he was withholding taxes from his employees.

(Hollabaugh Aff. ¶ 7.)  In support of his position, Defendant only provided evidence of having filed employment tax returns for 2003.  (Def.'s Br. in Supp., Ex. A.)  As Defendant only provided evidence that he filed employment tax returns for 2003, Defendant has not provided any basis to concluded that the confidential informant's statement was false, much less that the government knew or should have known that the confidential informant's statement was false.

"In order for a judicial officer to issue a warrant, law enforcement officials must present evidence from which the magistrate judge can conclude from the totality of the circumstances, 'including the "veracity" and "basis" of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000) (quoting *Gates*, 462 U.S. at 238). The affidavit of Special Agent Hollabaugh sets forth a substantial basis on which the Magistrate Judge could have concluded that the confidential informant's veracity and basis of knowledge had been established.

The affidavit provides a substantial basis on which the Magistrate Judge could have concluded that there was probable cause to search the five locations for records from 2002 and 2003. The substantial basis is limited to years 2002 and 2003, because the confidential informant made no statements as to 1999-2001. Moreover, the confidential informant could not have credibly made any such statements because his employment with Defendant did not begin until 2002. The affidavit does state that between 1999 and 2002 Defendant's assets increased while Defendant's reported income decreased. (Hollabaugh Aff. ¶ 19h.) Though "innocent behavior frequently will provide the basis for a showing of probable cause," *Gates*, 462 U.S. at 245 n.13, the increase in Defendant's assets while his income decreased is insufficient by itself to establish probable cause for 1999-2001. Also, the affidavit states that Defendant began operating X-Cel in 2002, which means the earliest that he could have begun underreporting his income from X-Cel is 2002. Therefore, the affidavit does not provide a

11

substantial basis on which the Magistrate Judge could have concluded that there was probable cause to search for records from 1999-2001.

### 2. Particularity

The Fourth Amendment requires that a search warrant "particularly describe the place to be searched, and the persons or things to be seized." U.S. CONST., amend. IV. "'The degree of specificity required depends on the crime involved and the types of items sought.'" *United States v. Abboud*, 438 F.3d 554, 575 (6th Cir. 2006) (quoting *United States v. Blakeney*, 942 F.2d 1001, 1026 (6th Cir. 1991)), *cert. denied*, 127 S. Ct. 446 (2006). "In a business fraud case, the authorization to search for general business records is not overbroad." *Id.* However, the "'[f]ailure to limit broad descriptive terms by relevant dates, when such dates are available to the police, will render a warrant overbroad.'" *Id.* at 576 (quoting *United States v. Ford*, 184 F.3d 566, 576 (6th Cir. 1999)).

As explained in the prior section, the affidavit only provides a substantial basis on which the Magistrate Judge could have found probable cause as to 2002 and 2003. The five search warrants, however, authorize searches for documents from 1999-2003. In *Abboud*, the defendants were being investigated for check kiting. The court determined that the warrant was only valid for records pertaining to a three-month period in 1999. *Abboud*, 438 F.3d at 576. The court found the warrant to be overbroad because it authorized the search for records from January of 1996 to May of 2002. *Id.* The court held that the warrant was only valid as to the three-month period in 1999. *Id.* In this case, the search warrants were

issued for documents from 1999-2003.  (Hollabaugh Aff., Att. Items to be Seized.)  As the affidavit only establishes a substantial basis for the Magistrate Judge to have found probable cause for 2002 and 2003, the search warrants are overbroad in permitting the government to search for records from 1999-2001.

### B.   *Leon* Good Faith Exception

"Though evidence obtained in violation of the Fourth Amendment is generally excluded, the Supreme Court has held that the exclusionary rule 'should be modified so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective.'"  *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005) (quoting *United States v. Leon*, 468 U.S. 897, 905 (1984)).  The "'good-faith inquiry is confined to the objectively ascertainable question [of] whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'"  *Abboud*, 438 F.3d at 578 (quoting *Leon*, 468 U.S. at 922-23 n.23).

> *Leon*'s good faith exception does not apply in the following sets of circumstances: 1) the supporting affidavit contained knowing or reckless falsity; 2) the issuing magistrate wholly abandoned his or her judicial role; 3) the affidavit is "so lacking in probable cause as to render official belief in its existence entirely unreasonable;" or 4) where the officer's reliance on the warrant was neither in good faith nor objectively reasonable.

*Frazier*, 423 F.3d at 533 (quoting *Leon,* 468 U.S. at 923).  Defendant argues under the third category that a "reasonably well trained" officer would have known the search warrants were invalid as to records from 1999-2001, because the affidavit only contains information about

13

Defendant's tax returns, not his income, for those years. *See Abboud*, 438 F.3d at 578 (holding "the affidavit's lack of probable cause was obvious to the reasonably trained officer" because the affidavit only listed allegations as to other years).

As to records from X-Cel for 1999-2001, the affidavit indicates that Defendant did not begin operating X-Cel until 2002. As the affidavit itself indicates that Defendant was neither the owner nor the operator of X-Cel prior to 2002, a reasonably well trained officer would have known that the search for documents from 1999-2001 was illegal despite the Magistrate Judge's authorization.

As to records from Spiral, Defendant's personal residence and the two cars, for 1999-2001, the affidavit did not provide a substantial basis for probable cause because the affidavit only provided information about Defendant's tax returns, but not about his income during those years. The affidavit does, however, discuss 1999-2001 with respect to Defendant's reported income versus his assets. (Hollabaugh Aff. ¶ 19h, Att. D.) The affidavit also offers analysis that applies Defendant's alleged scheme to his activities his 1999-2001. (Hollabaugh Aff. ¶ 19f, Att. B, C.) While these parts are insufficient to provide a substantial basis on which the Magistrate Judge could have found probable cause, based on this information a reasonably well trained officer would not have known that the search was illegal despite the Magistrate Judge's authorization. With respect to records for Spiral from 1999-2001, these parts of the affidavit set forth the scheme that Defendant is alleged to have used in 1999-2001. The affidavit has a minimal set of facts related to Defendant's alleged scheme and the

14

affidavit also explains how these four locations are connected to Defendant's alleged scheme. These parts of the affidavit provide "a minimally sufficient nexus between the illegal activity and the place to be searched to support an officer's good-faith belief in the warrant's validity, even if the information provided was not enough to establish probable cause." *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004) (citing *United States v. Van Shutters*, 163 F.3d 331, 336 (6th Cir. 1998)).  Therefore, the good faith exception applies to records from Spiral, Defendant's personal residence and the two cars, for 1999-2001.

### III.

For the foregoing reasons, Defendant's motion to suppress is granted in part and denied in part.  Defendant's motion to suppress is granted as to documents from the X-Cel Night Club for 1999-2001.  Defendant's motion to suppress is denied as to all other documents.  An order will be entered consistent with this opinion.


Date:    July 10, 2007              /s/ Robert Holmes Bell
                                    ROBERT HOLMES BELL
                                    CHIEF UNITED STATES DISTRICT JUDGE